**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

TIMOTHY M. FARRIS                                                                PLAINTIFF

V.                                                    CIVIL ACTION NO. 2:15-CV-25-KS-MTP

DR. BRENT BEVARD                                                            DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the Motion to Amend [44] and Motion for Summary Judgment [56] filed by Plaintiff Timothy M. Farris, and the Motion for Summary Judgment [54] and Motion to Strike [68] filed by Defendant Brent Brevard.  After considering the submissions of the parties, the facts, and the applicable law, the Court finds the following:

    1)      Plaintiff's Motion to Amend [44] should be denied;

    2)      Defendant's Motion for Summary Judgment [54] should be denied in part;

    3)      Plaintiff's Motion for Summary Judgment [56] should be granted in part and denied in part; and

    4)      Defendant's Motion to Strike [68] should be denied as moot.

## I.  BACKGROUND

This action centers around a Contract for Sale and Purchase of Real Estate (the "Contract"), in which Defendant Brent Bevard ("Defendant") entered to buy a house located at 76 Classic Drive, Hattiesburg, Mississippi (the "House"), owned by Plaintiff Timothy M. Farris ("Plaintiff").  The Contract was entered into on January 28, 2015, and set a closing date for the House on February 17,

2015.[1]  The Contract represents the complete agreement between the parties and specifies that it "cannot be changed except by their written mutual consent." (Contract [54-1][56-1] at p. 4:196-97.)

Under the terms of the Contract, Defendant was responsible for a home inspection by a licensed inspector in order to evaluate the non-cosmetic systems of the House, including the pool system.  (*Id.* at p. 2:54-61.)  The Contract further specified that

> [i]f a timely (as defined herein) Home Inspection Report reveals material deficiencies that have not previously been disclosed on the Property Condition Disclosure Statement ("PCDS") in accordance with Section 89-1-501 through 89-1-527 of the Mississippi Code of 1972 and which require amendment of the PCDS, Buyer(s) shall identify such material deficiencies to Seller(s) in writing together with a copy of relevant portions of the Home Inspection Report and Seller and Buyer shall comply with Sections 89-1-501 through 89-1-27 of the Mississippi Code of 1972 with regard to such disclosures, including Buyer's option to rescind this Contract as set forth in Section 89-1-503 of the Mississippi Code of 1972, as amended.

(*Id.* at p. 2:62-67.)

The required home inspection was performed, and Plaintiff agreed to make all repairs specified by the report.  However, no inspection was done of the pool system during the home inspection, as the licensed inspector was not qualified to perform such an inspection.  When Defendant's real estate agent asked Plaintiff's listing agent about a possible pool inspection, Plaintiff told his listing agent via text that it had been previously serviced by Blue Dolphin Pools and that Adcock Pools had built it.  (Text Between Plaintiff and Dottie Farris [54-6].)  There was no further written communication about a possible pool inspection.

Defendant went to the office of Blue Dolphin Pools, and was told that they had serviced the pool for years, and that the pool had a heater pump which had failed and had not been replaced.

---

[1] Party submissions regarding the current motions state that the closing date was February 24, 2015.  This date is inconsistent with both the Contract and the Complaint.  Parties have cited to nothing in the record that would have modified the closing date listed in the Contract.  The Court therefore takes the Contract and Complaint to be accurate, and will assume the submissions regarding these motions have inadvertently cited the wrong closing date.

(Defendant Depo. [62] at p. 19:13-18.)  Defendant admitted that he never saw the pool heater, and that he just assumed the pool was heated even though he did not recall anyone ever telling him it was heated.  (*Id.* at pp. 44:9, 47:13-48:23.)  Defendant's own real estate agent stated that the House was not listed as having a heated pool.  (Corts Depo. at p. 37:10-12.)  Defendant sent Plaintiff a Repair Request [54-8] on February 6, 2015, after learning about the broken pool heater.  Plaintiff replied to the request that same day, refusing to repair the heater and stating that it "has not worked in several years and [he] did not represent that it was a heated pool."  (Repair Offer and Rejection [54-9].)

On February 12, 2015, Defendant made a second walk-through of the House and decided to rescind the Contract based on the non-disclosure of the non-functional pool heater.  (Defendant Depo. [62] at p. 30:2-14.)  On February 13, 2015, Defendant signed the Earnest Money (Release of Escrow) Mutual Release & Distribution Agreement ("Release") [54-10].  The Release [54-10] stated that the reason being the return of the funds was "on second walk-thru, buyer wasn't interested in completing purchase."  That same day, Plaintiff signed and returned the Repair Request on the pool heater.  (Email [56-5].)  The Release was then purportedly faxed to Dottie Farris, Plaintiff's listing agent, after the Repair Request was returned, though whether or not the Release was actually received is in dispute.

All parties were aware of Defendant's purported rescission of the Contract by February 13, 2015, and in response, Plaintiff threatened to file suit in order to enforce the Contract.  (Plaintiff Letter [54-15].)  On February 18, 2015, Plaintiff filed the current action in the Chancery Court of Forrest County, Mississippi, bringing claims of breach of contract, intentional infliction of emotional

distress, and requesting specific performance, money damages, and punitive damages.[2]  The action

was removed to this Court on March 9, 2015, on the basis of diversity of citizenship pursuant to 28

U.S.C. §§ 1332 and 1441.  Defendant filed his Answer [2] on March 12, 2015, and brought counter-

claims of breach of contract, negligence and negligence *per se*, tortious interference with a business

relationship, and abuse of process, and requested declaratory judgment and money damages.  Both

parties ask for attorneys' fees and costs.

      Both parties have filed motions for summary judgment [54][56].  Additionally, Plaintiff has

filed his Motion to Amend [44], seeking leave to add a claim for breach of good faith and fair

dealing, based on the language found in the Release [54-10].

## II.  MOTION TO AMEND [44]

      Plaintiff seeks leave to amend its pleadings under Federal Rule of Civil Procedure 15(a).

However, the Fifth Circuit has held that the proper rule to apply for the amendment of pleadings

after a scheduling order has been issued is Federal Rule of Civil Procedure 16(b).  *Sw Bell Tel. Co.*

*v. City of El Paso*, 346 F.3d 541, 546 (quoting *S & W Enters., LLC v. Southtrust Bank of Ala., NA*,

315 F.3d 533, 535 (5th Cir. 2003)).

> Rule 16(b) provides that a scheduling order "shall not be modified except upon a
> showing of good cause and by leave of the district judge."  The good cause standard
> requires the "party seeking relief to show that the deadlines cannot reasonably be met
> despite the diligence of the party needing the extension."

*Id.* (quoting *S &W Enters.*, 315 F.3d at 535).

      In this case, the deadline to amend the pleadings expired on September 8, 2015.  (*See* Case

Management Order [22] at p. 4.)  Plaintiff filed his Motion to Amend [44] on March 16, 2016.  In

his motion, Plaintiff asserts that his good cause for amending outside of the Court-imposed deadline

---

[2]Plaintiff also brought a tortious interference of contract claim against unknown defendants.
The Court assumes those claims have been abandoned, as no other defendants have been named.

is the fact that he was not able to obtain the Release, the document upon which the document is based, until discovery commenced.  In his deposition, however, Plaintiff admitted to first receiving the Release when he subpoenaed Judy Corts' files. (Plaintiff Depo. [53-1] at p. 36:3-4.)  A subpoena duces tecum for these files was issued by the Chancery Court of Forrest County, Mississippi, on March 3, 2015, and gave Corts ten days to supply the requested files.  Based on the record before it, the Court can only assume that Plaintiff had a copy of the Release in his possession, or at least knew of its contents, for over a year before filing his motion purportedly based on the contents of the Release.  As such, the Court does not find that Plaintiff has shown good cause why he should be allowed to amend his complaint, and his Motion to Amend [44] will therefore be **denied**.

### III.  MOTIONS FOR SUMMARY JUDGMENT [54][56]

#### A.      Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

5

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Both parties have submitted motions of summary judgment [54][56].  The Court will address the liability issues under each of these motions, and will separately address the arguments each side makes as to remedies available.

### B.    Defendant's Motion for Summary Judgment [54]

#### 1.    The Contract was properly rescinded because the home inspection contingency was not met.

Defendant's first argument for summary judgment is that the Contract was properly rescinded because the home inspection contingency was not met.  Defendant contends that he had the right to rescind after Plaintiff refused to repair the pool heater as requested.  Defendant argues that Plaintiff had a contractual duty to repair undisclosed material deficiencies discovered by the home inspection provision, and that the right to rescind upon Plaintiff's failure to do so was reserved

by reference to the specified sections of the Mississippi Code.  The relevant portion of the Contract

[54-1] states

> [i]f a timely (as defined herein) Home Inspection Report reveals material deficiencies
> that have not previously been disclosed . . . , Buyer(s) shall identify such material
> deficiencies to Seller(s) in writing together with a copy of relevant portions of the
> Home Inspection Report and Seller and Buyer shall comply with Sections 89-1-501
> through 89-1-527 of the Mississippi Code of 1972 with regard to such disclosures,
> including Buyer's option to rescind this Contract as set forth in Section 89-1-503 of
> the Mississippi Code of 1972, as amended.

(Contract [54-1] at p. 2:62-67.)

From the language of this provision, Defendant's right to rescind the Contract would have

been triggered by a writing that identified an undisclosed material deficiency together with a copy

of the home inspection report through which Defendant discovered the deficiency.  The Court is

skeptical about the classification of the non-functional pool heater as a "material deficiency" when

the House was not listed as having a heated pool, but the rejection of this argument does not hinge

on this classification.  It is undisputed that the home inspection done of the House did not include

an inspection of the pool.  Furthermore, the Contract explicitly states that it "cannot be changed

except by [the parties'] written mutual consent . . . [and n]either party shall be bound by any terms,

conditions, oral statements, warranties, or representations not herein contained."  (Contract [54-1]

at p. 4:197-98.)  If the home inspection provision, which required an inspection by a licenced home

inspector, was modified to allow for a pool inspection by Blue Dolphin Pools, as Defendant

contends, that modification would have had to be written in order for it to be binding on Plaintiff.

The text message stating that Blue Dolphin Pools had been servicing the pool and Adcock

Pools installed it, is not sufficient to serve as a written modification.  First of all, this communication

occurred between Plaintiff and Dottie Farris, Plaintiff's listing agent, and not Plaintiff and

Defendant.  Second of all, the written statement by Plaintiff merely states the pool's history in

response to an inquiry by his own listing agent.  The previous text sent to Plaintiff from his agent is illegible to the Court, but does not appear to be asking for his consent from what little the Court can make out.  With the evidence before it, the Court cannot say, on a motion for summary judgment, that Defendant has met his burden in establishing that the Contract was modified by mutual written consent of the parties to include a pool inspection performed by Blue Dolphin Pools.

Even if the Court could find that the parties had modified to the Contract so that a separate pool inspection by Blue Dolphin Pools was a "home inspection" as required, Defendant has not met his burden in establishing that he met the contractual requirements of him to trigger his right to rescind.  Defendant has brought forward no evidence showing that he submitted a copy of the relevant home inspection report showing the deficient pool heater.  As Defendant was required to submit this report along with a written request for repair in order to trigger his rights, the Court cannot find that he has established he had the right to rescind.  Furthermore, the evidence shows that Plaintiff agreed to repair the pool heater before the Contract was rescinded.

Therefore, the Court cannot find that the Contract was properly rescinded under its home inspection provisions.

**2.      Alternatively, the Contract was properly rescinded because the Contract was premised on Plaintiff's negligent or fraudulent misrepresentation contained in the Property Disclosure Statement.**

Defendant also argues that he is entitled to summary judgment on the basis of his affirmative defenses of negligent or fraudulent misrepresentation. As an element of fraudulent misrepresentation requires Defendant to establish Plaintiff made an actual representation regarding the pool heater, rather just an omission of fact, and as Defendant has failed to do so, the only affirmative theory he could succeed on at this stage of the litigation is negligent misrepresentation.  *See Holland v.*

8

*Peoples Bank & Trust Co.*, 3 So.3d 94, 100 (Miss. 2008) (quoting *Bank of Shaw v. Posey*, 573 So.2d 1355, 1362 (Miss. 1990)) (listing "a representation" as an element of fraudulent misrepresentation).

To establish negligent misrepresentation, Defendant must show

(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Id.* at 101 (quoting *Hazlehurst Lumber Co. v. Miss. Forestry Comm'n*, 983 So.2d 309, 313 (Miss. 2008)).  The omission of fact Defendant asserts is the non-functioning pool heater, which is enough to satisfy the first element.  However, Defendant has not shown that the omission of the non-availability of a non-advertised amenity is material or significant enough to meet the second element of the defense.  The purported cost of the repair is not enough to prove materiality.  "The materiality of a representation is determined by the probable and reasonable effect which truthful answers would have had on the [contracting parties]."  *Sanford v. Federated Guar. Ins. Co.*, 522 So.2d 214, 217 (Miss. 1988).  Defendant has put forth no evidence to show what effect, if any, the disclosure of the non-functioning pool heater would have had, let alone that the effect would have been reasonable.  Furthermore, Defendant has not established that he reasonably relied on the pool being heated when he entered into the Contract, particularly when he admitted that he never saw the pool and he did not recall anyone ever telling him that the pool was heated.  Because he has not established the elements of a negligent representation defense, the Court will not grant summary judgment under this argument.

### 3.    Plaintiff's extra-contractual claims are due to be dismissed.

Defendant claims that Plaintiff's extra-contractual claims should be dismissed.  Plaintiff brings claims of intentional infliction of emotional distress and punitive damages.  The Court will address each of these claims in turn.

### a.      Intentional infliction of emotional distress

In order to recover for intentional infliction of emotional distress related to a breach of contract, "the plaintiff must show (1) that mental anguish was a foreseeable consequence of the particular breach of contract, and (2) that he or she actually suffered mental anguish."  *Univ. of S. Miss. v. Williams*, 891 So.2d 160, 173 (Miss. 2004).  Although the Mississippi Supreme Court has held that "evidence consisting solely of a claim of sleeplessness and mental anguish did not demonstrate an actual injury with sufficient certainty to warrant compensation," it has held that "discomforts" such as sleeplessness "take on a different importance when viewed in light of the event which engendered the mental anguish."  *Id.* (internal citations omitted).  For example, the state supreme court found that sleeplessness and irritability caused by an event which included the plaintiffs receiving death threats from an armed person who shot at their vehicle, handcuffed them, and took them prisoner, could establish emotional distress.  *Id.* (citing *Whitten v. Cox*, 799 So.2d 1, 10-11 (Miss. 2000).  "Understanding the nature of the incident is essential in establishing whether emotional distress is foreseeable . . . [and] in cases where the defendant's conduct is more egregious, the plaintiff's burden of establishing specific proof of suffering will decrease."  *Id.*  In *Williams*, the Mississippi Supreme Court found that events such as being assaulted in one's own home and receiving harassing phone calls would decrease the plaintiff's burden of proof of emotional distress in relation to the university's breach of contract.  *Id.*

Plaintiff points to his "many sleepless nights" that resulted from Defendant's alleged breach as evidence of his emotional distress.  Plaintiff argues that any reasonable person would know that

selling one's home is stressful, and that emotional distress is always foreseeable under such circumstances. When compared to the triggering events the Mississippi Supreme Court has found to justify a claim of emotional distress, though, this type of breach does not seem as egregious, and a higher burden is placed on the Plaintiff to prove his emotional distress. The evidence presented does not suffice. Therefore, the Court finds that Defendant's Motion for Summary Judgment [54] should be **granted** as to this claim and it will be **dismissed with prejudice**.

### b.    Punitive Damages

"To qualify for punitive damages in a breach of contract case, a plaintiff must prove by a preponderance that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." *Hamilton v. Hopkins*, 834 So.2d 695, 703 (Miss. 2003) (citations omitted). In support of his punitive damages claim, Plaintiff submitted the testimony of Defendant's real estate agent, Judy Corts. Corts testifies that Defendant gave her no reason for rescinding the contract, and when she explained the legal consequences, he said, "Well, we will just let him keep the earnest money." (Corts Depo. [59] at pp. 45:18-46:7.) The Court finds that this is enough evidence for a reasonable fact-finder to potentially find that Defendant acted with reckless disregard of Plaintiff's rights and will not **deny** Defendant's motion as to this claim.

### C.    Plaintiff's Motion for Summary Judgment [56]

Plaintiff argues that he is entitled to judgment as a matter of law on his breach of contract claim and on Defendant's counterclaims. It is undisputed that Defendant rescinded the Contract prior to closing on the House. Defendant argues, however, that Plaintiff was required by Mississippi law to disclose the fact that the pool heater did not work and that his failure to do so gave Defendant the right to rescind the Contract. Defendant also contends that Plaintiff breached the Contract first

by not repairing the pool heater as requested. Defendant bears the burden in establishing his affirmative defenses, including whether Plaintiff had an obligation to disclose the non-functioning pool heater and whether Plaintiff breached the Contract first.

Defendant has not met his burden in proving that Plaintiff had an obligation to disclose that the pool heater did not work. First, the Property Condition Disclosure Statement [54-7] required by §§ 89-1-501 through 89-1-527 of the Annotated Mississippi Code has no space for such a disclosure, which suggests that it is not a required disclosure under those statutes. Second, the Court has already found that Defendant has not put forth any evidence to establish that the non-disclosure was a misrepresentation under Mississippi law. *See supra* Part III.B.2. With no evidence or argument as to why Plaintiff was obligated by law to disclose the non-functioning pool heater, the Court cannot find that Defendant has met his burden in establishing a factual dispute as to this defense.

Defendant has also not met his burden in putting forward evidence to show Plaintiff was in breach of the Contract. There has been no evidence of a modification, written or oral, of the Contract allowing for a separate pool inspection. There has been no evidence that Defendant provided Plaintiff with an inspection report showing that the pool heater was non-operational. Finally, Plaintiff has put forth evidence showing that he agreed to repair the pool heater after he initially refused. The undisputed evidence shows that Plaintiff delivered his agreement to repair the pool heater before Defendant rescinded the Contract. (*See* Email [56-5].) Defendant argues that the Repair Request had expired by that point in time, but the request was made pursuant to the terms of the Contract, not as an offer for an additional contract separate from the original Contract, and gave Plaintiff until closing to comply. Therefore, even if Plaintiff had an obligation under the Contract to repair the pool heater, which the Court does not find has been established by the record,

then Plaintiff had not yet breached the Contract by not fulfilling this obligation.  Defendant's rescission of the Contract, then, was the first breach to occur.

Because Defendant has not put forth evidence to establish any of his affirmative defenses and because he has not disputed that he did, in fact, rescind the Contract before closing, the Court finds that he breached the contract and will therefore **grant** Plaintiff's Motion for Summary Judgment [56] with respect to his breach of contract claim.

Plaintiff also argues he is entitled to summary judgment on Defendant's counterclaims of negligence and negligence *per se*.  Defendant's counterclaims are based on the non-disclosure of the non-functioning pool heater.  However, as stated above, Defendant has not shown that Plaintiff had a duty to disclose that the pool heater did not work.  There is no evidence that Plaintiff ever represented that the pool was heated.  There is no indication that Defendant was led in anyway to believe that the pool was heated, as Defendant never even observed that there was a pool heater on the premises.  Because a necessary element of a negligence claim is the existence of a duty and because Defendant has failed to adduce any evidence that such a duty existed, the Court will **grant** Plaintiff's Motion for Summary Judgment [56] as to Defendant's counterclaims of negligence and negligence *per se*.  *See Enterprise Leasing Co. S. Cent., Inc. v. Bardin*, 8 So.3d 866, 868 (Miss. 2008) (citing *Laurel Yamaha, Inc. v. Freeman*, 956 So.2d 897, 904 (Miss. 2007)) ("To prevail in any type of negligence action, a plaintiff must first prove the existence of a duty.").  These claims will be **dismissed with prejudice**.

### D.    Remedies

Parties dispute whether or not the requested remedy, specific performance, is feasible at this point in time.  Because there is potentially a valid contract for the sale of the House to the current tenant, the Court is hesitant to rule on the availability of this remedy without more evidence in the

13

record.  Furthermore, there has been little to no evidence put forward as to damages as a result of the breach of contract.  The Court therefore finds that it does not have sufficient undisputed evidence before it to grant summary judgment as to the legal and/or equitable remedies available, and will **deny** both motions [54][56] in so far as they concern the remedies of the parties.

### IV.  MOTION TO STRIKE [68]

Defendant moves to strike the affidavit testimony of Dottie Farris, insomuch as the affidavit gives opinion testimony as to Plaintiff's duties to disclose.  As the Court did not consider this testimony in reaching any of its decisions, the Motion to Strike [68] will be **denied as moot**.

### IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion to Amend [44] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [54] is **granted in part** and **denied in part**.  It is **granted** in that Plaintiff's claim of intentional infliction of emotional distress is **dismissed with prejudice**.  It is **denied** in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment [56] is **granted in part** and **denied in part**.

It is **granted** in that the Court finds that Plaintiff is entitled to judgment as a matter of law as to their breach of contract claim.  It is also **granted** in that Defendant's counterclaims of negligence and negligence *per se* are **dismissed with prejudice.**  Defendant's counterclaims of tortious interference with a business relationship and abuse of process remain pending.

It is **denied** in that the Court finds that there are disputed issues of fact that must be decided before issues of remedies are decided.

14

IT IS FURTHER ORDERED AND ADJUDGED that Defendant's Motion to Strike [68] is **denied as moot**.

SO ORDERED AND ADJUDGED this the 10th day of June, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE